## Stewart Hodges, Appellant, v. The Bankers Surety Company, Appellee.

## Gen. No. 14,650.

**1. AGENT—*powers of manager.*** A business manager or representative in general has implied authority to do those things which are necessary and proper to be done in carrying out the business in its usual and accustomed way and which the principal could and would usually do in like cases if present. The question of the authority of the agent must depend, so far as it involves the rights of innocent third persons who have relied thereon, upon the *character* bestowed and not upon the *instructions* given; or, in other, words, the principal is bound to third persons who have relied thereon in good faith and in ignorance of any limitations or restrictions, by the *apparent* authority he has given to the agent, and not by the actual or express authority, where that differs from the apparent; and this, too, whether the agency be a general or a special one.

**2. AGENCY—*scope of manager's authority.*** The powers of a general manager are at least as broad as those of a general agent, and the *apparent* powers of a general agent managing the business of a foreign corporation in any locality are as binding upon the principal as an express authority when the facts are proven showing express authority. If the agent acts within the scope of either express or implied actual or apparent authority, the principal is bound.

**3. CONTRACTS—*what sufficient consideration to support.*** Mutual promises afford a sufficient consideration to support a contract.

**4. APPEALS AND ERRORS—*what errors not considered.*** Errors not assigned on the record will not be considered on review.

**5. STATUTE OF FRAUDS—*what essential to avail of.*** Where a contract is declared on specially, the defense of the Statute of Frauds must be pleaded.

**6. STATUTE OF FRAUDS—*what promise not within.*** *Held,* that the agreement in question in this case was not a promise to answer for the debt of another but was a new and independent contract based upon a new and independent consideration moving directly from the plaintiff to the defendant.

**7. AMENDMENTS AND JEOFAILS—*when refusal of leave to file plea not abuse of discretion.*** Refusal at the close of a trial to grant leave to file a plea of the Statute of Frauds, *held,* not an abuse of discretion.

MACK, J., dissenting.

Assumpsit. Appeal from the Municipal Court of Chicago; the Hon. STEPHEN A. FOSTER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Reversed and remanded.

Opinion filed December 7, 1909. Petition for rehearing denied January 14, 1910; additional opinion filed.

COLIN C. H. FYFFE, for appellant.

PHILIP STEIN and ELIAS MAYER, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

This case comes here upon appeal from a judgment of the Municipal Court of Chicago in favor of the defendant, appellee. The case was tried before a jury on the first count of the amended declaration, a demurrer to the second count having been sustained by the court, and the plaintiff having elected to stand by the count. The verdict of the jury was in favor of appellee by direction of the court.

The suit is in assumpsit for the recovery of damages growing out of an alleged agreement of appellee to pay the plaintiff, appellant, whatever the cost and expenses of furnishing materials and performing work and labor relative to the mason, concrete and carpenter work on the Eugene Dietzgen factory building at Sheffield and Fullerton avenues, Chicago, exceeded the amount payable to the Federal Concrete Steel Company, hereafter called the Federal Company for convenience. Appellant Hodges was a general contractor for the construction of the building, and had sub-let the mason, concrete and carpenter work to the Federal Company. The appellee had given its bond to appellant guaranteeing the faithful performance of the contract by the Federal Company. The Federal Company failed to perform its contract, and the agreement sued on was made after such failure, and in view of the situation produced thereby.

The first count of the amended declaration avers that the "plaintiff, Stewart Hodges, being a general contractor, for the purpose of carrying out an agreement entered into between him and a corporation known as the Eugene Dietzgen Company, by and un-

der which said agreement the said Stewart Hodges, for the certain consideration of forty-seven thousand, five hundred dollars ($47,500) agreed, among other things, to complete on or before the 1st day of September, 1906, certain building work and construction of a proposed fireproof factory building for the said Eugene Dietzgen Company at the northeast corner of Fullerton and Sheffield avenues in the City of Chicago, did make and enter into an agreement with a corporation known as the Federal Concrete Steel Company; that by and under said agreement the Federal Concrete Steel Company, for the certain consideration of thirty-three thousand dollars ($33,000) agreed, among other things, to complete on or before the 1st day of July, 1906, at the northeast corner of Fullerton and Sheffield avenues in the City of Chicago, certain building work and construction of certain portions of a proposed fireproof factory building, which said building work and construction the said Stewart Hodges was required to do under his agreement with the said Eugene Dietzgen Company; that the said agreement provided, among other things, that if the work should be delayed beyond the stipulated time, provided no general strike interfered, there should be a deduction from the contract of twenty-five dollars ($25) for each and every day the work remained unfinished after July 1, A. D. 1906.

"The plaintiff further avers that The Bankers Surety Company, having given its bond for fifteen thousand dollars ($15,000) for the faithful performance by the said Federal Concrete Company of its part of the contract with the said Stewart Hodges, and the said Federal Concrete Company, having been in default on, to wit: May 15, 1906, in the performance of its part of the contract with the said Stewart Hodges, the plaintiff immediately thereupon, in accordance with a condition of the said bond, notified the said The Bankers Surety Company of the default in performance of the said Federal Concrete Steel Company; that subsequent to said, to wit: 15th day

of May, 1906, under the authority and by the direction of the said defendant, said plaintiff did procure and invite bids for the completion of the work contemplated under the said agreement dated, to wit: the 4th day of April, A. D. 1906, in accordance with the drawings, plans and specifications therefor; that the lowest of the said bids procured as aforesaid was for a price and consideration for the completion of the work so provided to be done under the contract aforesaid, to wit: the sum of four thousand dollars ($4,000) in excess of the balance provided to be paid to the said Federal Concrete Steel Company under the said contract of, to wit: April the 4th, A. D. 1906; that the said The Bankers Surety Company, upon the request of the said plaintiff, refused to itself complete or relet the completion of the work to be done under the contract of the said Federal Concrete Steel Company with the said Stewart Hodges, which privilege was secured to the said The Bankers Surety Company by a condition of its bond, or to authorize the plaintiff to let the completion of the said work to the lowest bidder that plaintiff had procured to bid upon the completion of the contract; but believing that the said plaintiff could himself furnish the labor and materials to complete the said work cheaper than the said work could be completed by letting its completion to the lowest bidder procured as aforesaid, said defendant authorized and directed the said plaintiff to proceed to complete the work contemplated under the said agreement by himself furnishing the labor and materials to complete and do the work provided under the said agreement; and the said defendant then and there agreed to pay the said plaintiff whatever amount the costs and expenses of completing the said contract and the work provided to be done under the said contract in furnishing labor and materials therefor exceeded on its completion the balance payable under the said contract of, to wit: April 4, A. D. 1906, to the said Federal Concrete Steel Company; and the said plaintiff then and there agreed to pay to the said

Federal Concrete Steel Company whatever amount the balance payable under the said contract of, to wit: April 4, A. D. 1906, to the Federal Concrete Steel Company exceeded on the completion of the said work the costs and expenses of the plaintiff in completing the said work provided to be done as aforesaid.

"And the plaintiff further avers that, further relying upon the said authority of, direction of and agreement with the said defendant, The Bankers Surety Company, the said plaintiff did, on, to wit: June 1, A. D. 1906, enter upon the completion of the work provided to be done under the said contract of, to wit: April 4, A. D. 1906, between him and the said Federal Concrete Steel Company, and did then and there hire such superintendents as was necessary to carry on the said work to completion.

"And plaintiff further avers that, relying upon the said agreement of the said The Bankers Surety Company and its direction and authority hereinbefore referred to, to complete the said work provided to be done by the said agreement of, to wit: April 4, 1906, the said plaintiff did then and there furnish labor and materials and such workmen and the services of other persons as was necessary to complete the work provided to be done under the said contract in accordance with the plans and specifications thereof and did carry the said work on to completion, furnishing said labor and materials, and expended in the completion of the said work provided to be done under the said contract the sum of, to wit: sixty-two thousand dollars ($62,000) (in addition to the sum of two thousand dollars ($2,000) paid directly to the said Federal Concrete Steel Company on the authority and direction and with the consent of the said defendant, The Bankers Surety Company, prior to the abandonment of the said work by the said Federal Concrete Steel Company; that the said sum of, to wit: sixty-two thousand dollars ($62,000) represents the cost and expenses of the said plaintiff in furnishing labor and materials for and in the completion of the said work

provided to be done under the said contract; that the said work was completed, to wit: November 7, 1906, and yet the defendant has not paid the plaintiff the money justly due him, the said plaintiff, though often requested so to do.''

Under this count the plaintiff, Hodges, introduced evidence tending to show that George K. Thomas was the general manager of appellee in the State of Illinois, and documentary evidence of the contracts and bonds set out and referred to in the count.

Plaintiff's evidence also showed that after the various contracts and bonds were executed the Federal Company started to perform the work and furnish the materials specified in its contract with plaintiff, and continued the work for about six weeks or until about the middle of May, 1906, and then ceased work. The work which it did was imperfectly and improperly done, and Thomas, as the agent of the defendant, was notified of the manner in which the work was done. The evidence also showed that the Federal Company could not meet its payroll, and Thomas as such agent and manager agreed with the plaintiff that he might advance $2,000 to the Federal Company to meet its payroll, and plaintiff advanced the money; and that the Federal Company about that time abandoned the contract and refused to carry it out. The evidence further shows that by mutual agreement of all the parties interested, including Thomas for the defendant, bids were taken for the completion of the work by the plaintiff and the bids received were reported to Thomas, who declined to agree to have the work re-let because it might relieve from liability defendant's indemnitor, and requested the plaintiff to proceed and complete the work.

The evidence of the plaintiff further showed that when the bond to the Dietzgen Company was issued it had upon it a rubber stamp mark, reading ''George K. Thomas, Manager, 604 Chamber of Commerce; Tel. M. 2651, Chicago,'' and that the bonds issued by the defendant were issued and delivered through

Thomas as its manager and he collected the premiums or charges therefor.

The evidence offered by plaintiff further tended to show that Thomas had an office in the Chamber of Commerce Building in the city of Chicago, and that plaintiff had been to the office a great many times for the purpose of obtaining bonds for himself and his subcontractors on the building in question and, about the same time, on other buildings, that Thomas ordered all the stationery for the office and had five or six persons in the office, all connected with the business of the defendant company, and that the application blanks, the bonds, and everything of that kind were printed at the Cleveland office of defendant and sent to him; that Thomas corresponded with the defendant regularly during the months of March, April and May, 1906, using the following form of letter paper:

"THE BANKERS SURETY COMPANY
OF CLEVELAND, OHIO.

Capital $500,000.00          Surplus $100,000.00.
General Surety and Bonding Business.

GEORGE K. THOMAS,
Manager for Illinois,
604 Chamber of Commerce,
Telephone Main 2651."

The evidence further tended to show that the defendant company was doing a general bonding and surety business and that Thomas kept a record of the business and made reports every month to the company. The officers of the company occasionally visited Thomas' office, but the agents of the company did so frequently. The sign on the office was: "George K. Thomas, Manager for Illinois," at the top, and underneath appeared "Bankers Surety Company." On the right hand side of the door as one enters the office was "General bonding and surety business." On the left hand side was: "The Bankers Surety Company of Cleveland, Ohio, Harvey Golder, President."

On behalf of plaintiff the following offer of proof was made: "That about the first of June, 1906, plaintiff and Thomas met at the office of Stein, Mayer, Stein & Hume; that Sidney Stein, one of the firm, was the attorney and counsellor for the Bankers' Surety Company; that there were present at the interview Mr. Hodges, Mr. Thomas, Mr. Sidney Stein and Edmund D. Adcock, who was then attorney for Mr. Stewart Hodges; that Thomas at that interview offered the plaintiff that if he would go on and complete the contract of the Federal Concrete Steel Company, he (Thomas) would agree for the Bankers' Surety Company that in case the cost of completion of the contract, including the payment of $2,000 to the Federal Concrete Steel Company, and including payment by plaintiff of certain amounts owed by the said Federal Concrete Steel Company to workmen employed in and about the work on said building, and including the further payment of material bills then due and incurred by the Federal Concrete Steel Company, referring to material already placed in the building, the defendant, the Bankers' Surety Company, would reimburse and pay over to said plaintiff, Hodges, the amount which the cost of completing the work under the contract of the Federal Concrete Steel Company would be in excess of the contract price between plaintiff and the Federal Concrete Steel Company; that plaintiff accepted the offer and agreed to complete the work in accordance with the plans and specifications; that Hodges, plaintiff, told Thomas that a bid was received from Brown & Reed under which bid Brown & Reed offered to complete the contract and finish the work for $35,000, assuming the labor and material bills above mentioned; that Thomas refused to assent to the acceptance on behalf of plaintiff of the bid of Brown & Reed; that the bid of Brown & Reed was the lowest bid made by any person for the completion of the work; that the said Thomas in the same conversation told plaintiff of the indemnity agreement of George W. Stewart to the Bankers'

Surety Company, and that the Bankers' Surety Company did not wish to execute any written agreement for fear that it might in some way release Stewart, whom they considered responsible. Hodges agreed to pay any balance that might arise in favor of the Federal Concrete Steel Company, to wit: in case the money still left in the contract was more than sufficient to pay the bills and complete the work''

The trial court excluded all the evidence, including the offer of proof, upon the ground that no authority was shown to Thomas to make the agreement alleged in the first count of the amended declaration, and instructed the jury to find for the defendant.

The question is thus presented by the record whether or not, assuming the truth of all the evidence offered, and all fair and reasonable inferences in favor of the plaintiff which may be drawn from it, the evidence was competent to go to the jury, under proper instructions, and was sufficient to make out the plaintiff's case. If the evidence was competent and sufficient, it was a question of fact for the jury, and not a question of law for the court, and could not be disposed of by excluding the evidence and giving a peremptory instruction.

The evidence offered by the plaintiff tends to show, in our opinion, that the defendant company is a foreign corporation with its principal office at Cleveland, Ohio; and that it held out Thomas as the manager of its business for the State of Illinois. In Mechem on Agency, paragraph 395, the learned author says: "In general terms it may be said that such an agent has implied powers to do those things which are necessary and proper to be done in carrying out the business in its usual and accustomed way, and which the principal could and would usually do in like cases if present;" and cites German Fire Ins. Co. v. Grunert, 112 Ill. 68. The same author says in paragraph 283 of the work: "The question of the authority of the agent must depend, so far as it involves the rights of innocent third persons who have relied thereon,

upon the *character* bestowed and not upon the *instructions* given. Or, in other words, the principal is bound to third persons who have relied thereon in good faith and in ignorance of any limitations or restrictions, by the *apparent* authority he has given to the agent, and not by the *actual* or *express* authority where that differs from the apparent, and this too, whether the agency be a general or a special one."

The evidence presented tended to prove the apparent authority of Thomas to make the agreement set out in the declaration, and that the plaintiff relied upon such authority and the character of the agency bestowed. The Century Dictionary defines "manager" as "one charged with the management, direction or control of an affair, undertaking or business; a director." Webster defines "manage" as "to have under control and direction; to conduct; to guide; to administer; to treat; to handle." Bouvier's Law Dictionary defines "manager" as "A person appointed or elected to manage the affairs of another. A term applied to those officers of a corporation who are authorized to manage its affairs." The powers of a manager are at least as broad and comprehensive as those of a general agent. In Washington Gas Light Co. v. Lansden, 172 U. S. 534, 547, the court, speaking of the term "general manager" say: "The term in our judgment, when used in connection with such a corporation cannot, in the absence of any evidence on the subject, be presumed to mean anything more than that the person filling the position has general charge of those business matters for the carrying on of which the company was incorporated."

The question presented as to the apparent authority of general agents or managers representing foreign corporations has arisen more frequently, perhaps, in litigations with insurance companies than in any other class of cases; and in our judgment the principles applicable in those cases are applicable to this case. In Hartford Life & A. Co. v. Hayden's Adm'r., 90 Ky. 39, the court in discussing the power of a general

agent to waive conditions of a policy, say, at page 47 of the opinion: "Where a company is located in a State remote from that in which the insurance is effected, one intrusted with the general management of its business in the latter State should be regarded as a general agent (Southern Life Insurance Co. v. Booker, 9 Heiskell, 606) and possessing all the powers of those in charge of its business at the head or home office. Both the interest of the company and the protection of the public require this to be the rule."

In The Home Life Ins. Co. v. Pierce, 75 Ill. 426, the court say near the close of the opinion: "We understand a general agent to be one empowered to transact all his principal's business, 1 Pars. on Cont., 40.

"As Kellogg was held out by the company and acted in the capacity of general agent, even if the secret arrangement between him and the company was that he had no authority to adjust losses, that cannot relieve the company from being bound by what he said and did while acting in the capacity of general agent."

In Phenix Ins. Co. v. Stocks, 149 id. 319, the court in answering the objection that the agent upon whom a demand was made to submit the question of extent of the loss to arbitration in compliance with a provision of the policy in that regard, had no authority to act for the company in that behalf said, at page 335 of the opinion: "We think, under the facts of this case, the assured were warranted in treating the agent as a general agent of the company. Persons dealing with an agent cannot know, nor are they required to know, the limitations upon his power to represent his principal. The Company is bound by the acts of its agent in the exercise of powers within the apparent scope of his authority, unless limitations upon such powers is brought to the notice of the assured. (Fire & Marine Ins. Co. v. Chesnut, *supra;* Electric Life Ins. Co. v. Fahrenkrug, 68 Ill. 463; Home Life Ins. Co. v. Pierce, 75 id. 426; Commercial Ins. Co. v. Ruckman, *supra.*)" And to the same effect are Continental Ins. Co. v. Ruckman, 127 Ill. 364, 372; Lowenstein v. Lom-

bard Ayres & Co., 164 N. Y. 324; Van Werden v. Assurance Society, 99 Ia. 621; St. L. & S. W. Ry. Co. v. Elgin Condensed Milk Co., 74 Ill. App. 619; and Phenix Ins. Co. v. Hart, 149 Ill. 513, 523.

In Van Werden v. Assurance Society, *supra,* the manager of the Society for Iowa had received a horse, buggy and harness in part payment of the premium for three years in advance, and had remitted to the Society the first and second annual premiums but failed to remit for the third. The Society demanded the third premium, and, on failure of payment, notified the assured that the policy was not in force. The petition asked to recover the amount originally paid. The trial court directed a verdict for the defendant. The court in disposing of the case said, at page 628 of the opinion: "Our consideration of the character of the agency at Des Moines is to fix the relation of the Society itself to the transaction in receiving the horse and buggy, and from that standpoint to determine its liability for the repayment of the premiums. We said in the second division of the opinion that 'Dunstine was manager for Iowa in the sense that he was the society's general agent;' that the 'office in Des Moines was a branch office through which the business of the state was done.' The record is an abundant justification for the conclusion that in every essential particular the agency at Des Moines was general in Iowa, and no one would have thought of, nor should they be held to, a duty of looking beyond that office for information or adjustments in the matter of the defendant's business in the state."

In Southern Life Ins. Co. v. Booker, 65 Tenn. 606, cited in Hayden's Admr., *supra,* the action was brought on a policy of insurance for $10,000. One of the grounds of defense was that the policy was never in fact delivered so as to become binding upon the company, because it was the duty of the agents, and they were so instructed, to deliver policies only upon the actual payment of the cash part of the premium. The agent, it appeared, deliverd the policy without the

cash payment, accepting the note of Booker for the amount. Frequent demands were made for the payment of the note, but Booker expressed his inability to pay, and no part of it was paid prior to Booker's death. The question arose, as stated by the court: Did the agent have the authority to waive that part of the stipulation in the written application providing that the policy should not be binding until the amount of the premium was received by the Company or some agent thereof during the lifetime of the assured. The court, after quoting from Bohen v. The Williamsburg Ins. Co., 35 N. Y. Appeals 131, and The Trustees, etc., v. Brooklyn Fire Ins. Co., 19 N. Y. Appeals 305, and Goit v. The National Protection Ins. Co., 25 Barb. 189, and Sheldon v. The Con. Mut. Life Ins. Co., 1 Bigelow Ins. Reports, 27, at page 613 of the opinion say: "These authorities, we think, are founded in reason and sound principle.   *   *   *.  Therefore we hold, that Smithurste, if he was a general agent of the company, had the right to waive the payment of the cash part of the premium and deliver the policy; and if he did so, absolutely and unconditionally,—in the absence of fraud,—the delivery would be binding upon the Company."

It is apparent from the number of cases cited and quoted from in the very elaborate brief of counsel for appellee that there is a considerable apparent confusion in the authorities upon the question before us, but, we think that the apparent confusion disappears very largely, if not completely, when the language of the opinions is read and construed with reference to the facts and issues before the court in each case, and the decisions are given force and authority so far only as the facts in each case justify. The cases of Merchants' Nat. Bank v. Nichols & Co., 223 Ill. 41, and Jackson Paper Co. v. Commercial Nat. Bank, 199 Ill. 151, are referred to and quoted several times in the course of appellee's argument and are strongly relied upon in support of the proposition that the authority of the agent can only be established by tracing it to

the source of authority,—the principal, and that parties dealing with an assumed agent must be careful to see and be assured that he is the agent he represents himself to be, by so tracing his authority back to some act or word of the principal. A careful reading of these cases, however, shows that in both of them, the question of the power of an agent to sign his principal's name to negotiable paper or endorse the same in his principal's name was involved. In the Nichols case the power to borrow money was involved. These powers are of such extraordinary character and nature that nothing short of express authority to do an act to which either of those powers is indispensable will be sufficient, unless by necessary implication the duties to be performed cannot be discharged without the aid of such power, and the law of apparent authority is inapplicable. Mechem on Agency, secs. 389-394. This, we think, is the principle involved in those and similar cases.

In Gillespie v. Fulton Oil & Gas Co., 236 Ill. 188, cited by appellee, a question of fraud was involved, and the case has no application to the question before us.

In our opinion the great weight of authority in this country and in England is to the effect that the apparent powers of a general agent managing the business of a foreign corporation in any locality are as binding upon the principal as an express authority when the facts are proven showing express authority. If the agent acts within the scope of either express or implied actual or apparent authority, the principal is bound.

We think that upon the authorities the evidence offered on the question of agency was competent, and if adduced, would have required the court to submit the question to the jury under proper instructions, and that it was error to exclude the proof.

On the question of the alleged contract we think the tendered proof on behalf of plaintiff tended to show a valid legal contract which was performed by the

plaintiff, at a cost of $30,114.30 more than the amount that would have been payable to the Federal Company under its contract had it completed the work. If the plaintiff was able to make the proof according to his tender of proof it was admissible under the first count, and it was error to exclude it.

In our opinion the demurrer to the second count of the declaration as amended was properly sustained. The supposed agreement set forth in this count is alleged to be contained in two letters, one dated June 5, 1906, from plaintiff to G. K. Thomas, and the reply thereto of Thomas as manager, dated June 25, 1906. An examination of these letters convinces us that the first letter to Thomas is a mere notice of liability and contains no proposition or offer. The whole tenor of the letter is to the effect that the plaintiff intends to complete the Federal Company's contract and to hold the principal in the bond given to him, the Federal Company, and the defendant, as its surety, liable for the deficit if there was any after completion of the work by the plaintiff. The reply of Thomas to the letter says: "In reference to your letter of June 5, 1906, whereby you are going to proceed with the work, in accordance with that letter, * * * will say that the same meets our approval." The only meaning of this reply is that which is expressed on its face, namely, that he is willing to have plaintiff proceed and complete the unfinished building and hold defendant liable on its bond. This is not, and does not even suggest, the making of a contract.

Four motions were made by appellee and taken with the case. The first, second and third of the motions are to strike certain portions of appellant's reply brief which contain a reference to the statutes of this state, and citations of authorities, from the brief. These motions are denied.

The fourth motion for leave to correct appellee's brief in certain particulars is allowed.

For the error indicated the judgment of the Municipal Court is reversed and the cause remanded.

*Reversed and remanded.*

ADDITIONAL OPINION ON PETITION FOR REHEARING, BY MR. JUSTICE SMITH.

In its petition for rehearing appellee calls the attention of the court to two points urged in its brief which we failed to discuss in our opinion filed in this case; namely, that the agreement set out in the first count of the declaration as amended is void for want of a consideration; and, second, that the agreement proposed to be proven is within the statute of frauds and void because not in writing. It is urged that these points should be disposed of for the guidance of the trial court, if we adhere to our judgment heretofore entered.

In the opinion filed we said: "On the question of the alleged contract we think the tendered proof on behalf of plaintiff tended to show a valid legal contract which was performed by the plaintiff," etc. This, we thought, disposed of that question, as it could not be a valid contract without a good consideration.

The reasons urged by counsel for the defendant that the contract set out is without consideration were, first, that there was an existing contract between the plaintiff and a third person, the Dietzgen Company, for doing the work sought to be recovered for, and, second, that the plaintiff had agreed to indemnify the defendant against all loss and damage arising from the plaintiff's failure to perform his contract with the Dietzgen Company. We do not regard the contention or the reasons given therefor as sound.

There is one fundamental infirmity to both reasons urged. They ignore the fact that after the plaintiff entered into his contract with the Dietzgen Company he made a contract for a part of the work and materials with the Federal Company and the defendant had given its bond to the plaintiff for the faithful performance by the Federal Company of its contract with the plaintiff, and the Federal Company had defaulted in its contract and abandoned the same, and the defendant was liable in damages on its bond to the plaint-

iff for such default, at the time the alleged contract was made. All this had happened after the making of the plaintiff's contract with the Dietzgen Company and after plaintiff's agreement to indemnify the defendant against all loss and damage from plaintiff's failure to perform his contract. Thus the situation of the parties had changed and new rights and liabilities had arisen between the parties.

In our opinion the alleged agreement between the plaintiff and the defendant is based on a new and independent consideration, arising out of the rights and liabilities of the parties to it in consequence of the default and abandonment of the contract of April 4, 1906, between the plaintiff and the Federal Company, and the resulting liability of the defendant on its bond given to plaintiff to secure the faithful performance of that contract by the Federal Company. The liability of the defendant upon the bond dated April 26, 1906, signed by it and the Federal Company, had become fixed for the amount of the difference between the cost to the plaintiff to complete the contract of the Federal Company and the amount payable to that company had it fulfilled and completed its agreement of April 4, 1906. In regard to this liability under the facts shown, we think there can be no legal controversy or question. The Federal Company was liable for it under its contract with plaintiff; and the defendant was liable for it under its bond. By the terms of the bond it had the right to be notified in writing of any act on the part of its principal which should involve a loss thereunder, and it was so notified. It also had reserved the right and privilege to assume the contract of the Federal Company and to sub-let or complete the work covered by the contract as it might elect. Under this provision of the bond it had consented to join with plaintiff or to authorize plaintiff to request bids for the completion of the work. The lowest bid for the work was that of Brown & Read, which if accepted would have made the cost of com-

pleting the contract $4,000 more than the amount which would have been payable under the contract. Plaintiff desired to accept this bid and requested the defendant to consent thereto. But defendant did not want to sub-let the work for obvious reasons, one of which it gave, namely, that if it gave a written consent to the acceptance of the bid of Brown & Read for the amount of $35,000 it might in some way be construed as a release of its indemnitor. Plaintiff thereupon said that he looked to defendant to see to it that the work was completed.

It is clear, we think, that at this point the defendant was obligated to see this work completed or to pay damages if it was not completed. It is likewise clear, we think, that the plaintiff had the legal right, on the refusal of defendant, to go on and complete the work, and hold the defendant for the damages he sustained, which would have been $4,000 if the bid of Brown & Read had been accepted.

In this situation of affairs according to the tendered evidence and the averments of the first count, the defendant requested the plaintiff to complete the contract of the Federal Company giving his time and energy to the work and furnishing the materials and labor necessary therefor and agreeing to pay over any balance that might result or arise in favor of the Federal Company after paying the bills for materials and labor to that company, and agreed to reimburse and pay the plaintiff whatever amount the costs and expenses of completing the contract and the work exceeded on its completion the balance payable under the contract; and in consideration thereof the plaintiff accepted the proposal and agreed to complete the work in accordance with the plans and specifications in the manner proposed by the defendant.

This was an advantageous adjustment of the loss as it appeared at that time for the defendant. If the plaintiff had relet the contract to the lowest bidder there would have been a fixed and direct loss of $4,000

to the defendant from which there was no escape except by the agreement shown by the tendered proof. Presumably there was in the lowest bid a contractor's profit on the work. This the defendant hoped and believed it would save by the adjustment. There was likewise a detriment to plaintiff necessarily involved in the adjustment. He agreed to waive his right under his contract with the Dietzgen Company to sub-let a part or all of the work, which he had exercised when he sub-let the mason, concrete and carpenter parts of the work to the Federal Company, and thus relieve himself of the labor risks and responsibilities of personally performing the work, and to take upon himself personally the labor risks and responsibilities of completing the work, giving his time and energy necessary therefor, and thus saving the contractor's profits to the defendant. This was for the benefit and advantage of the defendant and, from the standpoint of the parties at that time, constituted a direct and substantial benefit and advantage to the defendant. In other words, it was a direct and substantial consideration moving from the plaintiff to the defendant.

Furthermore, there are the express mutual promises of the parties, the agreement of each party to the contract being a consideration for the agreement of the other party.

We come now to a consideration of the second point, that the agreement proposed to be proven is within the statute of frauds. In the first place this question is not before us for the fundamental reason that no error is assigned on the record covering the point. It has been repeatedly held that no errors should be considered by the court except such as are assigned on the record. Ditch v. Sennott, 116 Ill. 288. Passing this, however, we find other reasons for not considering the question on this record.

The record shows that on March 5, 1908, before the trial was entered upon, the court granted leave to the

plaintiff to withdraw the common counts filed by him. The cause was tried, therefore, on the first special count (as amended) of the declaration. No plea of the statute of frauds was pleaded. The question is here sought to be raised, and is argued, on objection to the evidence upon that ground, and upon the motion of defendant to instruct the jury. The question cannot be raised in this manner. The record before us does not present the question, which we are thus specifically by the rehearing petition requested to discuss and pass upon. If there is any thing well settled in this state it is that where the contract is declared on specially, the defense of the statute of frauds must be pleaded. If a party does not set it up as a defense either by demurrer, plea or answer, he is deemed to have waived it. Beard v. Converse, 84 Ill. 512, and cases there cited; Koenig v. Dohm, 209 *id.* 468; Highley v. Metzger, 187 *id.* 237; Sanford v. Davis, 181 *id.* 570; Snow v. Griesheimer, 120 Ill. App. 516; Rozenski v. Dewes Brewery Co., 93 Ill. App. 370. The only exception to this rule is where the declaration consists only of the common counts. Under such a declaration it is competent to rely on that statute as a defense under the general issue without pleading it, by objection to the evidence on that ground, or a motion to strike out evidence stating that ground for the motion, or in some other available form.

We have not overlooked the fact shown by the record, though no argument is based on it, that at the close of the trial, after the evidence had been closed, counsel for defendant moved the court for leave to file a plea of the statute of frauds, and subsequently tendered a plea to the court. The court refused to allow the plea to be filed. We think it was within the reasonable discretion of the court to deny the motion at that time, and we find no error in the ruling for that reason; and for the further reason that the agreement set out in the first count was not a promise to answer for the debt of the Federal Company, but a

new and independent contract based upon a new and independent consideration moving directly from the plaintiff to the defendant, as we have shown above while discussing the consideration of the contract. For these reasons we did not indulge in *obiter dictum* on this point in our opinion.

The petition for rehearing is denied.

*Petition denied.*

MR. JUSTICE MACK: I dissent from the original opinion herein on the ground that the agent had no authority, actual or apparent, to bind the appellee by the alleged contract.