**Edwards & Deutsch Lithographing Company, Appellant, v. The Hildmann Printing Company, Appellee.**

### Gen. No. 25,945.

PRINCIPAL AND AGENT—*when instruction on duty to ascertain agent's authority erroneous.* An instruction that persons dealing with agents are bound to ascertain not only the fact of the agency but also the extent of the agent's authority, and are bound to see to it that the acts done by him are within his power, while undoubtedly correct where the agent is exercising extraordinary authority, is improper where the principal has clothed the agent with apparent authority by furnishing him with printed cards which represented the supposed agent as his solicitor with authority to solicit orders.

Appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1920. Reversed and remanded. Opinion filed April 12, 1921. Rehearing denied April 26, 1921.

CHARLES R. WHITMAN, for appellant.

PRATT & ZEISS, for appellee.

MR. JUSTICE MATCHETT delivered the opinion of the court.

The controversy of the parties in this case arises out of two written orders given by plaintiff. The first of these dated July 19, 1917, was an order for the binding of 300,000 "In-er-seal Booklets" at $1 per thou-

sand. The second order was for the folding and binding of 200,000 "Carnation Milk Receipt Booklets" at $3 per thousand. While on the face thereof, appearing to be of different dates, the orders were in fact given on the same day.

The declaration alleges the work was negligently done by the defendant and claims damages by reason thereof.

The defense was that one E. A. Matson, who took these orders, had no authority from the defendant to take the orders in defendant's name; that plaintiff was informed at the time the orders were given that Mr. Matson was going into business on his own account, and that he, Matson, not defendant, would do the work contracted for. Mr. Matson had formerly been connected with Braithwaite, Weinberg & Company, a concern which did similar work and which had also done work for the plaintiff. In connection therewith Mr. Matson had become acquainted with Mr. McQueen, who was the purchasing agent of the plaintiff. At the time of soliciting these orders from plaintiff, who was represented by Mr. McQueen, Mr. Matson presented to McQueen the following card:

"Wabash 2872                                          Auto 57-309
                    Linotype Composition
            THE HILDMANN PRINTING CO.
                    Designers and
Catalogues          Producers of          Publications
Booklets            High Class            and Binding
                    Printing
E. A. MATSON                     722-732 Sherman Street
                                          Chicago"

The evidence for the plaintiff was to the effect that Mr. Matson stated at this time that he had severed his connection with the company for which he formerly worked and had made a connection with the defendant, and was soliciting the kind of work they had done by outside printers; that Mr. McQueen asked for the

names of people who could vouch for the kind of work done there; that Matson said he did not know the names of these customers, but suggested that Mr. McQueen call up the supply house and get the names of such customers; that Mr. McQueen did so, and got the name of a customer, George W. Herbert; that he called Mr. Herbert up, who was enthusiastic in his praise of defendant's work, and that the orders were therefore placed. After the entry of the order, stock upon which the work was to be done was delivered at defendant's office and receipted for on defendant's stationery, the receipts, however, being signed with the name of the particular person issuing each receipt. Most of these receipts were, however, issued by Mr. Matson. Such deliveries were made and such receipts issued upon several days covering a period from July 19, 1917, to July 31, 1917, on which date plaintiff wrote a letter to defendant marked "Attention, Mr. A. E. Matson," in which it gave certain written instructions in regard to the work.

On August 1 and on various days thereafter, the plaintiff received bills on the stationery of the Hildmann Printing Company stating, "Sold to Edwards & Deutsch Lithographing Company," and for the various amounts claimed to be due on account of this work. These bills were received by mail. On August 4, 1917, plaintiff drew its check to the order of defendant for the sum of $175 and the same was delivered to defendant, which indorsed it "per E. A. Matson," and the same was paid to it through the Clearing House on August 7. On August 31, 1917, plaintiff drew a check in defendant's favor for $200, which was indorsed by defendant, and also paid through the Clearing House. On September 25, 1917, a check for $100 was drawn by plaintiff to defendant's order and also cashed, and on that date plaintiff wrote to defendant the following letter:

"September 25, 1917.

"The Hildmann Printing Co.,
732 Sherman Street,
Chicago.         Attention—Mr. Matson.
Gentlemen:

Enclosed herewith find our check for 10437 for $100.00 to apply on account, as requested by you Monday..

This leaves a balance which will be taken care of promptly by us upon our being able to check up and inspect the work as you turn it back to us.

Yours very truly,
            Edwards & Deutsch Litho. Co."

F.F.C. EC."

The plaintiff further showed that the card used by Matson at the time of soliciting these orders was printed by the defendant and that it was used by Matson with the defendant's knowledge. As against this evidence, however, Mr. Matson testified:

"I went down to see Mr. McQueen and I explained to him that I am going in business for myself, and I had at that time a card of the Hildmann Printing Company with my name on it, which Mr. Hildmann printed for me on my request until I got some of my own stationery printed, and I explained all this to Mr. McQueen in my brother's presence; and he then said he could not make the order out in my name, he wanted to make it in the Hildmann Printing Company name, and I explained the whole situation, that I am not connected with the Hildmann Printing Company and never was on their payroll, and I have done business as E. A. Matson & Company, and on several occasions I repeated the same thing, and requested them to change the name from the Hildmann Printing Company, just as every other customer of mine did; * * * *"

This evidence is in part corroborated by the testimony of Mr. Matson's brother.

By instruction No. 16, given at the request of defendant, the jury were told:

"You are instructed that it is a rule of law that persons dealing with an assumed agent are bound, at their peril, to ascertain not only the fact of the agency, but the extent of the agent's authority.    They are put upon their guard by the very fact that they are dealing with an agent, and must at their peril see to it that the act done by him is within his power."

It is insisted by appellant that the giving of this instruction was error.    The cases of *Merchants Nat. Bank of Peoria v. Nichols & Shepard Co.*, 223 Ill. 41, and *Jackson Paper Mfg. Co. v. Commercial Nat. Bank*, 199 Ill. 151, are relied on in support of the instruction. The instruction undoubtedly states a correct rule of law as applied to the facts of these cases, which involved the rights of agents to exercise the extraordinary powers of borrowing money and indorsing negotiable paper in the name of their respective principals.    The distinction between such cases and this one was pointed out by this court in *Hodges v. Bankers Surety Co.*, 152 Ill. App. 372.

In this case the undisputed evidence shows that the principal clothed the supposed agent with apparent authority by furnishing him with printed cards, which represented the supposed agent as its solicitor.    In Mechem on Agency, vol. 1, sec. 246, the general rule applicable in such cases is stated as follows:

"Gathering together all these elements, it may be stated as a general rule that whenever a person has held out another as his agent, authorized to act for him in a given capacity, or has knowingly and without dissent permitted such other to act as his agent in that capacity; or where his habits and course of dealing have been such as to reasonably warrant the presumption that such other was his agent, authorized to act in that capacity—whether it be in a single transaction or in a series of transactions—his authority to such other to so act for him in that capacity will be conclusively presumed to have been given, so far as it may be necessary to protect the rights of third persons who

have relied thereon in good faith and in the exercise of reasonable prudence; and he will not be permitted to deny that such other was his agent authorized to do the act he assumed to do, provided that such act was within the real or apparent scope of the presumed authority.''

We think the instruction as given was not applicable to the facts of the case, and had a tendency to confuse the issue of fact on which it was the duty of the jury to pass.

For the error in giving this instruction, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Barnes, P. J., and Gridley, J., concur.