**Joseph J. Foley and Martha A. Foley, Appellees, v. Wolfle, Steffelin & Company, Appellant.**

**Gen. No. 28,396.**

1. INSURANCE—*issues in action for breach of contract to procure insurance.* It is no defense to an action against an insurance solicitor for damages for breach of a contract to procure insurance for plaintiffs on certain furs in conjunction with insurance on jewelry which had previously been written, that the request for the additional insurance covering the furs was not seasonably made or that an additional premium in excess of that agreed upon which was demanded by the insurer for the policy covering the furs was not paid upon demand since the action is not one upon a policy but for breach of the agreement to secure insurance.

2. INSURANCE—*evidence as to agency of immediate solicitor.* A judgment against an insurance agency corporation for damages for breach of a contract to procure insurance on furs owned by plaintiffs, which necessarily predicated on a finding that the solicitor who made the agreement with plaintiffs was the agent of the defendant, will not be reversed as manifestly against the weight of evidence which is conflicting, where it appears that such solicitor was an employee of defendant with general authority to use de-

fendant's letterheads in whatever manner he pleased, that he occupied a desk and had a stenographer in defendant's offices, that he had previously procured similar insurance for plaintiff through the defendant's office which insurance was treated by defendant as its own, defendant having placed such previous in. surance and collected the premium therefor in its own name.

Appeal by defendant from the Municipal Court of Chicago; the Hon. WELLS M. COOK, Judge, presiding. Heard in the first division of this court for the first district at the March term, 1923. Afirmed. Opinion filed March 10, 1924.

HAIGHT, ADCOCK, HAIGHT & HARRIS, for appellant.

FRED B. SILSBEE, for appellees.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

This is an appeal by the defendant corporation from a judgment in the sum of $1,425 entered in favor of the plaintiffs upon the finding of the court.

The statement of claim alleged that the defendant had agreed to procure insurance against every hazard and in every location upon certain furs, the property of plaintiffs, which it failed to do; that the furs were destroyed by fire during the time for which it was agreed insurance should be obtained, and that thereby plaintiffs were damaged. The defense alleged in the affidavits denied the making of the contract as alleged and in particular denied the authority of one Keck to make such a contract in the defendant's behalf. There is practically no conflict in the evidence as to material matters.

The defendant is an Illinois corporation; its purpose, "to conduct a general insurance agency business and any and all business pertaining thereto or connected therewith." Plaintiffs are husband and wife, whose alleged dealings with the defendant were through one Keck, whose precise relationship to the defendant company is the principal matter in controversy.

Mr. Foley had known Mr. Keck for about fifteen years and had placed considerable insurance with him, including both life and fire insurance. Some time in January, 1920, in a conversation with Mr. Foley, Keck suggested that Mrs. Foley's jewelry ought to be insured and also solicited him to take out some accident insurance. At a later date Mr. Foley informed Keck that he had decided to place insurance on the jewelry and Keck said he would immediately place a binder on it, which he did February 28, 1920. The insurance was taken in London Lloyds for the amount of $3,355, for one year, and at a premium of $33.55. The binder was signed "C. P. Wurts, authorized agent for London Lloyds," after which signature appeared the name of the defendant, "Wolfle, Steffelin & Company." On the back of the binder appeared the name of the company, "Wolfle, Steffelin & Co., Insurance, 822 Rookery Building, Adams and La Salle St., Chicago. Wolfle, Steffelin & Co." Thereafter, under date of April 1, 1920, Lloyds' policy in the usual form was delivered to plaintiffs covering the same property. On the back of this policy appeared the following statement: "In event of claim, immediate notice to be given to Wolfle, Steffelin & Co., Insurance, 822 Rookery Building, Adams and La Salle St., Chicago. Wolfle, Steffelin & Co. W. S."

About January 19, 1921, Mr. Foley received by mail the following letter:

"Wolfle, Steffelin & Company
Insurance—All Branches
Chicago.

New Address
226 W. Adams St.,
Phone Main 3967                     January 17, 1921.

Mr. Jos. J. Foley,
2215 Michigan Ave.,
Chicago, Illinois.

Dear Joe:

Enclosed please find notice of renewal of your jewelry policy.

You will observe that the amount required this year is $50 on this cover. This is for the reason that shortly after you received your policy last year the insurance company established a $50 premium as the minimum premium which they would accept. They will, however, undertake to cover the jewelry and furs for a total valuation of $5,000 under this premium.

By this requirement you will observe that any amount of furs or jewelry up to $5,000 requires a minimum premium of $50 annually.

If you and Mrs. Foley have acquired additional articles of jewelry and furs since this policy was issued last year and you will furnish me with a list of them and the usual appraisals for an amount up to $5,000 they may also be covered for the minimum premium of $50.

> Yours very truly,
> H. B. Keck,
> Director of Agencies.''

HBK-W

A few days later Mr. Keck personally called on Mr. Foley and inquired whether he had received this letter. He was told that Mr. Foley had discussed the matter with Mrs. Foley and that they had additional furs which they would add to the list of jewelry which the policy of the previous year had covered. Mr. Foley testifies:

''I said that did not quite bring the amount to $5,000; it was a little less than that. He said: 'All right, what are the figures?' We took the figures from the letter and added them, and I gave him a list of the furs such as Mrs. Foley had given me. He said: 'All right.' He would place a binder on both the jewelry and the furs, but that I would have to get an appraisement letter on the furs from the furrier; in other words, the furrier would have to give a letter showing the cost of the furs. He told me the difference between the $5,000 and the total amount of the

policy would make no difference, the premium would be $50 just the same; that was the minimum that they would accept. This letter (Plaintiffs' Exhibit 3) was on my desk at the time.''

Pursuant to report by Keck to the defendant corporation, defendant on February 28, 1921, procured from C. P. Wurts, authorized agent for London Lloyds, a binder to the plaintiffs for insurance in the sum of $3,355, upon the jewelry for another term of one year, and on March 26, 1921, this binder was sent by C. P. Wurts through the mail to the defendant. March 29, 1921, the defendant directed Wurts, the agent for Lloyds, to add to this binder the furs at the sum of $1,325, and these furs were included in the cover note by having the description typed thereon. March 28 thereafter the appraisal of the furs was furnished. The binder or cover note with the furs added to it was returned by Wurts to the defendant in April with the words ''subject to an additional premium'' written on it. The amount of the premium was not stated and the testimony for the defendant showed that it did not receive this information until the last week of July, when it received a bill from Wurts for a total premium of $70.22. Prior to this time, on May 27, 1907, a bill for the premium on this insurance in the amount of $50 was sent by the defendant to the plaintiff Foley and he paid it on May 27, 1907, by a check directly to Mr. Keck. It appears that Lloyds' rates on March 1, 1921, had been changed from $1.00 to $1.50 per hundred. The defendant, after learning the amount of the additional premium requested, turned the binder over to Keck, who took it with a bill for the additional premium to Mr. Foley. This was in August, 1921. Payment of the additional premium was refused by plaintiffs on the ground that under the terms of the letter of January 17 the entire premium was to be only $50. Keck at that time said to Mr. Foley that, if he, Foley, would not pay the bill, that he, Keck, would either have to pay it himself or

get it fixed up some other way, and Mr. Foley said that they could either give him the insurance for $50 or take the binder back and give him the money that was paid for it. Keck replied that he would take the binder back and see what could be done about it. Mr. Foley's testimony is that at the conclusion of the conversation Keck stated, "Oh, I will get it straightened out all right." Keck afterwards turned the binder over to defendant who on November 17, 1921, returned it to Lloyds' representative for cancellation for nonpayment of premium. The $50 paid was sufficient on the *pro rata* basis to carry the insurance on the furs and the jewelry up to the date of the cancellation. Plaintiffs were never notified that the binder had been cancelled and nothing further was done about the matter until after the property was destroyed by fire on February 23, 1922. This was five days prior to the time when the policy would have expired had it been in force for a year. A policy to plaintiffs was issued by Lloyds in London and sent to their agent in Chicago, but it was never delivered for the reason that such policies were not delivered to the broker or agent until the premium had been paid.

Keck had a desk in defendant's office. He had a stenographer and secretary, of whose salary he paid one-half and the defendant one-half. The letter of January 17, which was written on the letterhead of the defendant company, seems to have been selected by this secretary. Keck had a personal letterhead with the name of International Life Insurance Company on it, and he also used the letterhead of the Franklin Life Insurance Company. Of the $50 premium paid by plaintiffs, Lloyds' agent received $45. Five dollars was retained for commission, and this amount was divided between defendant and Keck, defendant receiving $1.25 of the amount and Keck $3.75. It also appeared that Mr. Keck was the director of agencies for the International Life Insurance Company of St. Louis. His employment by the defendant

company was under a written contract, which is in evidence and shows that he was authorized to solicit certain kinds of insurance and collect premiums therefor.  The contract does not in any way refer to insurance by Lloyds and no express authority to make contracts seems to have been given therein.  He was not required to bring all business which he might obtain to the defendant, and the record shows that he did, in fact, at other times, take out insurance for Mr. Foley through another agency.

The defendant contends in this court that the plaintiffs were in two respects negligent, either of which would prevent their recovery: First, because the request for additional insurance and the appraised list were not furnished before March 1, 1921; and, second, because they did not pay the additional premium when informed that Lloyds had demanded such premium in August, 1921.

We think these contentions ignore the theory upon which the plaintiffs seek to maintain this action. Their suit is not against the insurance company upon a policy, but against the defendant, upon the theory that defendant was plaintiffs' agent; that as such agent it agreed to procure insurance for the plaintiffs and failed and neglected to fill its contractual obligations, in that respect.   That one who enters into such an agreement and fails to fulfil the contract entered into becomes liable in damages for the breach of his contract is settled by the numerous well-considered decisions.   *DeTaslet v. Crousellat,* 7 Fed. Cas. 542; *Shoenfeld v. Fleisher,* 73 Ill. 404; Cooley's Briefs on the Law of Insurance, vol. 1, p. 338; *Everett v. O'Leary,* 90 Minn. 154; Joyce on Insurance, vol. 2, sec. 678.   The controlling question in the case, therefore, is whether Keck, under all the circumstances disclosed by the evidence, may properly be considered as the agent for the defendant company in the making of the contract by which defendant was to procure

insurance upon the goods in question for the time mentioned and for a premium of $50. The defendant insists that Keck did not have such authority under the facts which here appear, and the principal authority relied upon in this respect is *Foster v. Graf,* 287 Ill. 562, a case in which the authority of an agent to indorse negotiable paper in behalf of a principal was questioned and where the Supreme Court of this State followed the well-known rule laid down in *Schroeder v. Harvey,* 75 Ill. 638; *Merchants' Nat. Bank of Peoria v. Nichols & Shepard Co.,* 223 Ill. 41; and *Jackson Paper Mfg. Co. v. Commercial Nat. Bank,* 199 Ill. 151. The distinction between cases where the authority in question is either to indorse negotiable paper or borrow money and the ordinary case under facts such as appear here was pointed out by this court in *Hodges v. Bankers Surety Co.,* 152 Ill. App. 372, and that decision was followed by this court in the later case of *Edwards & Deutsch Lithographing Co. v. Hildmann Printing Co.,* 221 Ill. App. 61. That Keck was such agent and had such authority, as a matter of fact, we think the court might well conclude from the evidence in the record. At any rate, we are convinced that this court upon that record cannot hold that the finding of the trial court is clearly and manifestly wrong in that respect. That he was an agent with at least some authority is established by the written contract. Other facts tending to show authority are that he had a desk in the office of the defendant company; that he had a stenographer, one-half of whose salary was paid by the defendant; that he was evidently permitted to use the stationery of the defendant in whatever manner he pleased; that the records kept by the defendant indicated that this business was regarded as its own, although brought in by Keck; that the prior policy which was issued, by the indorsements upon it, indicated the same thing; that Keck, upon receiving the order for the business, took it to the defendant and the defendant placed the in-

surance with the representative of London Lloyds; that the bill for the premium was made out, not in the name of Keck but in the name of the defendant. All these facts we think tend to show that the business here transacted was between the defendant and the plaintiffs, and that Keck, in so far as he was connected with it, acted as defendant's agent.

Being of the opinion that we cannot say the finding of the court on the issue of fact is manifestly against the evidence, it remains only to affirm the judgment.

*Affirmed.*

McSURELY and JOHNSTON, JJ., concur.