Defendant may have ten days' stay of execution after notice of entry of judgment and thirty days to make and serve a case.

Judgment accordingly.

LOUIS A. ELFENBEIN, Plaintiff, *v.* RAFFAELE ABBONDANZA et al., Defendants.

(County Court, Kings County, July, 1909.)

Damages — Particular contracts and relations — Miscellaneous contracts — To effect transfer of insurance.

> The damages recoverable for the failure of the vendor of real property to have an insurance policy changed to the vendee's name, in compliance with his agreement to do so, is the amount which would procure a similar policy.

> The vendor, in such a case, on his failure to have the policy transferred, does not become an insurer of the property nor liable for the amount of the policy upon the destruction of the property by fire.

ACTION to foreclose a mortgage on real property.

Marcus B. Campbell, for plaintiff.

Roy, Watson & Naumer, for defendants.

DIKE, J. This is an action to foreclose a mortgage on real property situated in this county, which is opposed by a counterclaim for damages alleged to have been suffered by the defendants from the alleged failure of the plaintiff to have the change of ownership noted at the time of the transfer of the property, on a certain fire insurance policy, the defendants alleging that the plaintiff undertook to have this change of ownership noted by the insurance company, and which agreement plaintiff denies ever having made.

The point raised by the defendants appears to be a new one in this State. It is, therefore, of peculiar interest, on account of the serious obligations which might be entailed upon property holders under circumstances similar to the case at bar.

The allegation of payment, in the answer, under the facts as developed in this case, is not sustained. The title to the property was conveyed to the defendant by the plaintiff; and, at the same time and as part consideration for the sale of the property, the defendant executed and delivered to the plaintiff a purchase money mortgage for $800 and took the property subject to two other mortgages. The contract for the sale of the property was closed at the Title Guarantee and Trust Company; and, at the time of the closing, a certain insurance policy for $2,500 was in existence in the name of the plaintiff as owner of the property, which policy had then six or seven months to run. This policy of insurance was the subject of some conversation between the parties or their lawyers at the time of the closing of title. There is a sharp divergence in the testimony of the parties regarding this conversation. It is contended on behalf of the defendant, and urged by him as sustained in his proof, that he purchased the said policy of insurance from the plaintiff by agreeing to pay a sum due to some workman who had done some work on the premises in the nature of small repairs, the amount of which being about the sum of the unexpired premium on the policy. The defendant alleges that the policy was left with the plaintiff and accepted by him with the understanding and agreement that the plaintiff was to see that the name of the new owner to the property in the policy was changed upon the books of the company. Plaintiff denies the possession of the policy, alleges that he gave it to the defendant and denies explicitly ever having agreed to have the name in the policy changed. Three months after the taking of title by the defendant, a fire having occurred which damaged the house to the extent of about $987, the defendant notified the plaintiff of the fire and requested the policy of insurance; whereupon the plaintiff alleged that he did not have the policy. The plaintiff's attorney was then sought

12

out and, after a search, said he did not have the policy. It apparently has disappeared. Its whereabouts is the mystery of this case.

In the contract of sale of the property from the plaintiff to the defendant, which is on one of the Title Guarantee and Trust Company forms, there is no mention made of the insurance policy in any way. For three months after the closing of the title, the defendant, the new owner, although he had not received any policy of insurance with his name on it, remained inactive and in apparent contentment with the situation as it then existed. The plaintiff had sold the property, taking back a mortgage. That was his protection. In studying the question of probabilities in such a case as this, the question naturally arises, who was most interested in seeing that this property was properly protected by a policy of fire insurance? Surely not the plaintiff, the vendor, as he was protected by a bond secured by a mortgage on the property. Obviously, then, the owner of the property was the one who should have sought to safeguard himself by protecting the property by a policy of insurance, or seeing that it was done, if he felt that some one else should do it; and yet, not until after the fire occurred, is there any evidence of activity on the defendant's part. He then went to the plaintiff and the plaintiff's attorney. The result of this situation, as urged by the defendant, that some oral agreement, alleged to have been made by plaintiff or plaintiff's attorney, to perform some act on this policy of insurance, the unexpired premium of which was about three dollars, is to render void and of no effect the bond and mortgage given by this defendant at the time of the closing of the title. Assume that the policy of insurance was delivered to the attorney for the plaintiff at the time of the closing of title. In that case, he was performing some act for this defendant. Was he not more the agent of the defendant than of the plaintiff? Was it not, under these circumstances, the duty of the defendant to have whatever duty was to be performed, promptly performed, with the view of protecting himself? Was he not guilty of laches in taking no step for three months to see whether any agreement had been carried out in his behalf? Both

the plaintiff as well as the plaintiff's attorney, however, vig-
orously denied the contention urged by the defendant as to
assuming any obligation to perform any act regarding this
policy of insurance for the defendant. The plaintiff denied
that the policy had been in his possession for a time prior
to the day of closing of title, or that it was ever in his pos-
session since that time, or that he had agreed to do any work
for the defendant which was commuted by the transfer of
the policy. The evidence of plaintiff and his attorney on
this point seems to hold the preponderating element neces-
sary to sustain their contention.

The question of the measure of damages under the con-
tention of the defendant is a serious one. Under this alleged
casual and informal agreement as to the policy of fire insur-
ance, the defendant now claims through an alleged breach
serious damages from this plaintiff, and, in effect, not only
wipes out the solemn obligation represented by the bond and
mortgage, but in addition claims damages arising from the
fire over and above the amount of the mortgage. Could such
damages ever be properly considered within the contempla-
tion of the parties? The defendant makes the plaintiff an
insurer, and it does not seem to me that the damages claimed
to have been suffered by this defendant resulting from the
burning of the building are the direct and natural result of
the breach of the contract. No proof was offered that the
defendant did not receive damages from the insurance com-
pany under the unexpired policy; and, in the absence of the
policy, it would be hazardous in the extreme to speculate in
any way regarding the liability of the company for any sum
represented by damage through fire to these premises. In
the case of Dodd v. Jones, 137 Mass. 322, the contract for
the sale of a house and lot contained a promise that the
grantor would assign a policy of insurance then in full force
and effect. The property was conveyed to the grantee, but
the policy was not assigned, although the assignment was re-
quested. The purchaser did not procure any insurance, and
the house was injured by fire. The purchaser then attempted
to recover from his grantor such a sum as he would have been
entitled to recover under the policy, had it been assigned,

alleging that, by reason of the grantor's failure to perform his contract in respect to the policy, the policy became void. The trial court held that the plaintiff was entitled to recover only for procuring insurance for the unexpired term of the policy. The court, in its opinion, said, in part: "The agreement was not a contract of insurance, but of sale, and the measure of damages for the breach of it was the value of the thing sold. A sum that would procure a similar policy, and thus place the plaintiff in the position she would have been in had there been no breach of the contract, would indemnify her, and she cannot elect to go without insurance and hold the defendant an insurer. Damages resulting from the burning of the building are not the direct and natural consequences of the breach of the defendant's contract, and would not have been contemplated by the parties as included in it. The natural consequences of the failure of the defendant to perform his contract would be that the plaintiff could procure another policy of insurance, and she cannot charge the defendant with the consequences of her neglect to do that."

In that case, as in the case at bar, the defendant's obligation on the bond and mortgage is certain, clear, distinct and undisputed; while the counterclaim interposed by the defendant seeks to render null and void a serious obligation contained in the bond and mortgage, by means of an alleged agreement contained in a talk incidental to the formal closing of the title. It seeks to make the plaintiff an insurer and to obligate him to pay damages which, under no consideration, could have been contemplated by the parties. Following the Massachusetts case, it seems to me that the only damages defendants could claim would be an amount which would procure a similar policy.

Under all the circumstances in this case, which has been so forcibly presented by counsel for each side, I am constrained to give judgment for the plaintiff, decreeing foreclosure and sale; and the counterclaim of the defendant is dismissed.

Judgment for plaintiff.