**W. Wood PRINCE and James F. Donovan, as Trustees of the Central Manufacturing District, Plaintiffs-Appellants,**

v.

**ROYAL INDEMNITY COMPANY, Defendant-Appellee.**

**No. 76–1061.**

United States Court of Appeals, Seventh Circuit.

Argued June 8, 1976.

Decided Sept. 2, 1976.

Rehearing Denied Sept. 22, 1976.

George B. Christensen, Gerard E. Grashorn, Chicago, Ill., for plaintiffs-appellants.

James T. Ferrini, John P. Gorman, Chicago, Ill., for defendant-appellee.

Before CUMMINGS, TONE and WOOD, Circuit Judges.

TONE, Circuit Judge.

This is a diversity action on a fire insurance policy containing the usual provision that assignment of the policy requires the insurer's consent. The issue is whether under Illinois law the insured had an insurable interest which entitled him to recover for a fire loss after selling the insured property, assigning the policy, and undertaking to forward the assignment to the insurer for acceptance but failing to do so. When the buildings covered by the policy burned and the seller-insured filed a proof of claim, the insurer, not having received the assignment or consented to it before the fire, denied liability on the ground that the sale terminated the seller's insurable interest. The District Court sustained this position. We reach the opposite result.

The case was submitted to the District Court for decision on the following stipulated facts: Plaintiffs are the trustees of Central Manufacturing District (CMD), which is engaged in developing and managing industrial real estate. CMD is the named insured under a fire insurance policy issued by defendant Royal Indemnity Company which covered, among other buildings, a warehouse and garage leased by CMD to A & P Company. Royal had been the insurer of the A & P–leased property since 1966. In 1972 CMD agreed to sell 69 parcels of real estate, including the A & P–leased property, to the Prudential Insurance Company of America. As a part of this transaction it was agreed that CMD would continue to manage the properties transferred. Transfer of ownership was effected in four separate closings. At the fourth closing, on January 4, 1973, title to the A & P–leased property and 16 other parcels was transferred.

Among the documents tendered by CMD to Prudential at each closing were executed assignments of fire insurance policies covering structures on the transferred parcels. At Prudential's request, CMD agreed to forward these assignments to the various insurers to obtain their approvals of the assignments.

CMD neglected to deliver the assignment of the policy covering the A & P–leased property to defendant for acceptance. On May 27, 1973, a fire destroyed the warehouse and damaged the garage, causing a loss which it is agreed amounted to $2,415,729. CMD filed a proof of loss. Defendant denied liability on the ground that CMD's insurable interest terminated when the property was transferred to Prudential.

Some six months after the fire Prudential transferred the A & P property back to CMD and CMD returned the purchase price pursuant to an agreement which recited that it was made "in lieu of determining the amount of damages for which the Trustees are liable to Prudential on account of the fault or neglect of the Trustees . . ."

Plaintiffs argue that CMD had an insurable interest in the property by virtue of (1) CMD's liability to Prudential for failure to procure defendant's consent to the assignments and (2) the reconveyance by Prudential to CMD, which plaintiffs argue was a rescission of the original sale of the parcels and relates back to the time CMD transferred them to Prudential.[1] The District Court held that basing an insurable interest upon CMD's failure to perform

"would serve to deprive the insurance company of its right to consent to any

---

1. A third theory, that CMD's contract with Prudential to manage the properties gave CMD the requisite interest to insure them, was raised for the first time on appeal and therefore comes too late. We note in passing, however, that such a limited interest would not support the damages which plaintiffs seek, because recovery is limited to the extent of actual interest. *Chicago Title & Trust Co. v. United States F. & G. Co.,* 511 F.2d 241, 247 (7th Cir. 1975); see 3 *Couch on Insurance* 2d § 24:2.

assignment as provided for expressly in the insurance policy, and would serve to exculpate the transferor from liability for its own misfeasance or breach of contract with the transferee at the expense of the insurance company." Prince v. Royal Indemnity Co., 404 F.Supp. 1076, 1081 (N.D. Ill.1975).

The court also found the second argument to be without merit, and entered judgment for the insurer. We reverse on the basis of plaintiffs' first argument.

 We find no authority in Illinois law to support the District Court's view. The existence of an insurable interest in the named insured does not depend upon whether the insurer could have refused to consent to an assignment of the policy to another insured, or whether the named insured breached an obligation to a third party.[2] All that is necessary is an " 'interest in property by the existence of which [the insured] receives a benefit, or by the destruction of which he will suffer a loss' . . .. 'That the person may suffer loss is a sufficient foundation for his claim to an insurable interest.' " *Home Insurance Co. v. Mendenhall,* 164 Ill. 458, 464–465, 45 N.E. 1078, 1079–1080 (1897).[3] See also *Lieberman v. Hartford Fire Insurance Co.,* 6 Ill. App.3d 948, 949, 287 N.E.2d 38, 40 (1st Dist. 1972). The law elsewhere is in accord. See 3 *Couch on Insurance* 2d § 24:13; *Parks v. Federal Crop Insurance Corp.,* 416 F.2d 833, 839 (7th Cir. 1969). Neither legal title nor possession is required. *Beddow v. Hicks,* 303 Ill.App. 247, 258, 25 N.E.2d 93, 98 (3d Dist. 1940); *Welch v. Northern Assurance Co.,* 223 Ill.App. 77, 83 (1st Dist. 1921). Thus Illinois courts have held that an insurable interest exists in a variety of situations in which the insured lacks either title or possession, or both. *Griffin v. Pfeffer*

*Lumber Co.,* 285 Ill. 19, 120 N.E. 583 (1918) (lessee of real estate); *Danvers Mutual Fire Insurance Co. v. Schertz,* 95 Ill.App. 656 (3d Dist. 1900) (owner of equitable title); *Whelan v. Massachusetts Bonding & Insurance Co.,* 205 Ill.App. 122 (2d Dist. 1917) (mortgagor and mortgagee of same property); *Home Insurance Co. v. Peoria & P.U.R. Co.,* 178 Ill. 64, 52 N.E. 862 (1899) (bailee); *Welch v. Northern Assurance Co., supra,* 223 Ill.App. 77 (shareholder in a solvent company). The reason for the requirement of an insurable interest is "to prevent the use of insurance for illegitimate purposes. It should not be extended beyond the reasons for it by excessively technical construction." *Womble v. Dubuque Fire & Marine Insurance Co.,* 310 Mass. 142, 147, 37 N.E.2d 263, 266 (1941), quoted with approval and followed by this court in *Lititz Mutual Insurance Co. v. Lengacher,* 248 F.2d 850, 853 (7th Cir. 1957).

Accordingly, if CMD might have suffered a loss by reason of the destruction of the property, it had an insurable interest. CMD argues that there was such a risk of loss arising from the undertaking to forward the executed assignment of the insurance policy to the insurer and to obtain the latter's consent. That undertaking created a duty to forward the assignment and seek the insurer's consent and to notify Prudential if consent was not obtained. Because of its breach of this duty, CMD argues, it was liable to Prudential when the insured property burned, and CMD therefore had an insurable interest.

The defendant insurer's strongest response to CMD's argument is based on several early cases, one decided by an Illinois court, in which the liability of sellers for failure to effect transfers of insurance on the property sold was limited to the value

**2.** As is customary, the policy does not specify the kind of interest the insured must have in the insured property in order to recover but leaves that to the law. The policy provides, *inter alia,* that defendant insures CMD

"to the extent of the actual cash value of the property at the time of the loss, but not exceeding the amount which it would cost to repair or replace the property . . .

against all direct loss by fire . . . to the property described herein while located or contained as described in this policy . .."

**3.** The first quotation within a quotation is from Justice Gray's opinion in *Eastern R. Co. v. Relief Fire Ins. Co.,* 98 Mass. 420, 423 (1868). The second is from *May on Insurance,* § 80, at 87.

of the policy before the fire.[4] This argument relates, of course, to the amount of the insurable interest, not to its existence, but we are in any event not persuaded that these cases should control here. The Illinois case is easily distinguishable,[5] and, whether or not the others represent the present law elsewhere, they are not in our opinion consistent with the principles applied in analogous Illinois cases in recent years.

■ The liability of CMD to Prudential is analogous to the liability of an insurance broker to a customer for negligent failure to perform an agreement to procure insurance. *Roberson v. Knupp Insurance Agency,* 125 Ill.App.2d 373, 377, 260 N.E.2d 849, 851 (5th Dist. 1970); *Johnson v. Illini Mutual Insurance Co.,* 18 Ill.App.2d 211, 216, 151 N.E.2d 634, 637 (3d Dist. 1958). Whether the action against the broker sounds in tort based on negligence, as contended by defendant and as suggested by *Talbot v. Country Life Insurance Co.,* 8 Ill.App.3d 1062, 1065, 291 N.E.2d 830, 832 (3d Dist. 1973), or in contract for failure to perform the agreement to procure, as *Foley v. Wolfie, Steffelin & Co.,* 232 Ill.App. 333, 339 (1st Dist. 1924), would indicate, makes little difference. In either case, Illinois courts have consistently held that the broker's liability covers the full extent of the loss, up to the limits of the policy the broker agreed to procure. *Gothberg v. Nemerovski,* 58 Ill.App.2d 372, 383, 208 N.E.2d 12, 19 (1st Dist. 1965); *Welch v. Northern Assurance Co., supra,* 223 Ill.App. at 81. The liability is based, not upon the agency-principal relationship of a broker and client, but upon the

broker's failure to perform an obligation. See *Evan L. Reed Manufacturing Co. v. Wurts,* 187 Ill.App. 378, 386 (1st Dist. 1914). Because the broker in such a case would be liable to the purchaser for the loss if the property were destroyed, he has an insurable interest in it. See 3 *Couch on Insurance* 2d § 24:13.

■ Like a broker asked to obtain renewal of a policy, CMD did not agree to insure the property but did agree to seek continuation of the insurance. And, like such a broker, CMD undertook responsibility for obtaining the insurer's agreement to continue to insure the risk. We perceive no reason why the liability of CMD to Prudential should not be the same as that of the broker to his customer, and we believe an Illinois court would hold that it is the same. If we are right, it follows that CMD has an insurable interest to the extent of that liability.

■ Whether the defendant insurer would have consented to the assignment is immaterial, just as, in the case of the broker who has agreed to seek renewal of a policy, it is immaterial whether the insurer would renew the policy. Inherent in the obligation to seek continuation of an insurance policy is the duty to notify the applicant if the insurer declines to continue the risk, so the applicant "may not be lulled into a feeling of security or put to prejudicial delay in seeking protection elsewhere." *Talbot v. Country Life Insurance Co., supra,* 8 Ill.App.3d at 1065, 291 N.E.2d at 832. If the insurer would not have consented to the assignment of the policy, CMD would have

---

**4.** *Davis v. Osborn,* 159 Ill.App. 283 (3d Dist. 1910); *Dodd v. Jones,* 137 Mass. 322 (1884); *Elfenbein v. Abbondanza,* 64 Misc. 176, 118 N.Y.S. 1073 (1909); *Williams v. Meyers,* 144 Okla. 24, 289 P. 294 (1930); *United States Bond & Mortgage Corp. v. Berry,* 249 Ky. 610, 61 S.W.2d 293 (1933).

**5.** *Davis v. Osborn, supra,* note 4, refused to impose liability on the seller, who had merely agreed to assign the policies and had assigned them. Instead of immediately sending the assigned policies to the insurer for approval of the assignments, the seller, with the buyer's knowledge, had placed them in a safe over the holiday on which the fire occurred. After hold-

ing that the buyer had no cause of action in trespass on the case against the seller under these circumstances, the court then went on in dictum to say,

"The only damage that [the buyer] could possibly have recovered against [the seller] would have been the amount that [the buyer] would have been required to pay in securing policies of like amount upon this stock of merchandise and there is no proof as to any such damage in the record." 159 Ill.App. at 286.

This statement must be read with the court's view of what the seller's obligation was, *viz.,* merely to assign the policies.

learned of that fact upon requesting consent. It could then have notified Prudential accordingly so the latter could obtain coverage elsewhere. CMD's inaction thus caused damage to Prudential whether or not the defendant insurer would have consented to the assignment. This case can be decided therefore without deciding whether consent would have been withheld.[6]

Nor is CMD's right to recover under the policy impaired by the possible existence of a defense against Prudential based on the latter's failure to make inquiry concerning the delay in delivery of the consent. An insured's exposure to loss need not be certain or reduced to judgment to give him an insurable interest. When he in good faith settles a claim covered by insurance, the amount paid in settlement is recoverable from the insurer. *Kinnan v. Charles B. Hurst Co.,* 317 Ill. 251, 256–260, 148 N.E. 12, 14–16 (1925); *Loeber Motors, Inc. v. Sims,* 34 Ill.App.3d 342, 348–349, 340 N.E.2d 132, 136–137 (1st Dist. 1975); *Crest v. State Farm Mutual Automobile Insurance Co.,* 20 Ill.App.3d 382, 387, 313 N.E.2d 679, 683 (2d Dist. 1974). The net cost to CMD of the settlement with Prudential is the amount of CMD's loss caused by fire.

We reject defendant's argument that CMD's loss is an "indirect" loss and therefore not covered by the policy. The policy requires a "direct loss by fire . . . to the property." (See note 2, *supra.*) The words "direct loss" do not refer to the reason the fire caused loss to CMD but to the relationship between the fire and the damage or destruction to property. As we said above, the policy does not limit the kind of insurable interest the insured must have in order to recover.

The judgment of the District Court is therefore reversed and the case is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

---

6. Nothing in the record suggests any reason why the defendant would not have given its consent. The contention made at oral argument that consent might have been withheld was based on matters outside the record. It appears from the record that defendant did consent to the assignments of policies covering certain other property involved in the sale.