Thomas A. MORGAN, Jr. and April Lynn Morgan, Plaintiffs,

v.

**PATRONS MUTUAL INSURANCE ASSOCIATION, Defendant.**

Civ. A. No. 91–1238–MLB.

United States District Court, D. Kansas.

Feb. 10, 1993.

Broc E. Whitehead, Wichita, KS, for plaintiffs.

Eldon L. Boisseau, Daniel G. Menzie, Turner & Boisseau, Chartered, Wichita, KS, for defendant.

MEMORANDUM AND ORDER

BELOT, District Judge.

This case comes before the court on the parties' cross-motions for summary judgment. (Docs. 17 and 19) Thomas and April Morgan seek to recover $150,000 in insurance proceeds for a fire that destroyed the Hill City Auto Bowl on February 3, 1990. Patrons denied coverage on the basis that Morgans do not have an insurable interest in the insured premises.

Although each party purports to controvert the other party's characterization of the facts, the court does not perceive any dispute over any material fact. Michael Powell and his ex-wife Brenda Powell owned the Hill City Auto Bowl in Hill City, Kansas. In their 1988 divorce decree, the Powells were ordered to use their best efforts to sell the Hill City Auto Bowl. In August, 1989, the Morgans entered into an oral contract with Michael L. Powell to purchase the business premises and operation of Hill City Auto Bowl. In reliance on the oral agreement, Morgans relocated their family and possessions from Arkansas to Hill City, where they resided in an apartment adjoining the Hill City Auto Bowl. The Morgans operated the Hill City Auto Bowl from August, 1989, through February 3, 1990. They made numerous improvements to the premises, such as upgrading the bowling lanes, pin setting

equipment, and maintenance, and also installed a new snack bar and proshop.

The Morgans purchased an insurance policy from Patrons on January 9, 1990. The policy provided for $150,000 insurance coverage to the building, as well as $50,000 coverage for the Morgans' personal property and business property stored in the building.

Hill City Auto Bowl was completely destroyed by fire on February 3, 1990. The value of the loss exceeded the amount of the Morgans' insurance coverage with Patrons. The Morgans made a claim for insurance proceeds under the policy. Patrons denied the claim and cancelled the policy on March 31, 1990.

## STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the moving party can demonstrate that there is no genuine issue of material fact and is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c).

## DISCUSSION

■ The sole issue before the court is whether the Morgans had an insurable interest in the Hill City Auto Bowl at the time of the fire on February 3, 1990. Under Kansas law, a person has an insurable interest in property whenever he would profit by or gain some advantage by its continued existence and suffer some loss or disadvantage by its destruction. *Weaver v. Hartford Fire Ins. Co.*, 168 Kan. 80, 84, 211 P.2d 113 (1949). The Morgans contend they had an insurable interest because they were in lawful possession of the Hill City Auto Bowl on the date of loss, made substantial economic improvements to the premises, and derived income from their operation of the business. Patrons, on the other hand, contends that the Morgans have no insurable interest because no valid, binding, and enforceable contract for purchase of the Hill City Auto Bowl was ever executed by the Morgans. It argues the oral contract is unenforceable because a

sale of an interest of land falls within the statute of frauds. K.S.A. 33–106. Absent a written contract, Patrons contends a finding of an insurable interest would generate a windfall to the Morgans and would be contrary to Kansas law.

The parties cite to several Kansas cases in support of their respective positions. These cases merit some discussion. In *Pomeroy v. Aetna Insurance Co.*, 86 Kan. 214, 120 P. 344 (1912), the Pomeroys and Truitts entered into a written contract whereby the Pomeroys agreed to convey 120 acres of farmland in Neosho county to the Truitts in exchange for the delivery of a warranty deed to a lot in the city of Chanute, along with the Truitts' equity in the city property. The Pomeroys assumed a mortgage on the Chanute property, and the Truitts gave a note secured by a mortgage on the farm. The deed, mortgage and assignments called for in the contract were signed and placed in escrow, and the Pomeroys and the Truitts exchanged residences. A day or two later, a fire destroyed the farm house in Neosho county.

The Pomeroys sued to collect on a fire insurance policy covering the farm house. The insurance company argued the Pomeroys had no insurable interest in the property. The Court found that performance of several conditions in the contract had not occurred, and therefore the Pomeroys retained title to the farm property at the time of the fire and could have recovered the property in the event of a failure of the Truitts to comply with the conditions. *Id.* at 218, 120 P. 344. The Court held the Pomeroys were entitled to recover on their insurance policy.

In *Pomeroy*, the sellers were attempting to recover on their insurance policy. The case stands for the proposition that a seller retains an insurable interest in property until all conditions in the contract under which the property is sold have been fulfilled. The case does not address what insurable interest the purchasers (Truitts) may have had in the farm house. *Pomeroy* is therefore inapposite to the case before us.

In *New Hampshire Ins. Co. v. American Employers Ins. Co.*, 208 Kan. 532, 492 P.2d 1322 (1972), one insurance company sued another insurance company for contribution arising out of fire damage to property on which each insurer paid the loss. The facts giving rise to the suit were that a divorce decree awarded certain real property to a husband, but required the husband to deliver to the wife a promissory note and mortgage on the property in the amount of $25,000. The husband insured the property through the plaintiff against fire loss in the amount of $50,000. The wife was unable to learn whether the husband had insured the house against fire loss, and purchased insurance in the amount of $25,000 from the defendant. A fire thereafter damaged the property in the amount of $22,632.18. Both parties paid their respective insureds.

The plaintiff filed the suit seeking contribution pursuant to the "Guiding Principles", a set of rules used in the insurance industry in determining contribution where there is common coverage on the same property. The Court framed the issue before it as whether the husband was insured under the wife's insurer's policy, thereby constituting common coverage under the Guiding Principles.

According to the Court, the Guiding Principles contemplated situations where two or more policies covered the same property and the same interest. *Id.* at 536, 492 P.2d 1322. The Court found that situation was not presented before it because mortgagors and mortgagees have separate and distinct interests in the same property, each of which is insurable. *Id.* at 535, 492 P.2d 1322. The Court held there was no common coverage on the property and contribution was not in order. *Id.* at 536, 492 P.2d 1322.

*New Hampshire Ins. Co.* is an application of the rule that mortgagors and mortgagees have separate and distinct insurable interests in property and does not address the situation before the court.

In *Fancher v. Carson–Campbell, Inc.*, 216 Kan. 141, 530 P.2d 1225 (1975), the Court addressed the issue of whether a standard or union mortgage clause included in a policy of insurance created a right in the sellers of real property under a conditional sales contract to recover for fire damage to the insured premises. In *Fancher*, the Fanchers entered into an escrow contract on June 23, 1972, to sell a duplex to the Watts. The contract called for the Watts to make equal monthly installment payments over a period of seven years, and required the Watts to insure the premises against fire loss for at least the unpaid balance of the purchase price. The contract required the Fanchers to execute a general warranty deed and place it in escrow with the Farmers and Merchants State Bank, which was to act as the parties' escrow agent.

Watts obtained a policy of fire insurance covering the duplex from Marysville Mutual Insurance Company. The amount of coverage was $10,000 and the policy contained a standard mortgage clause naming the Bank as the "mortgagee [or trustee]." Approximately two weeks later, the duplex was completely destroyed by fire. Watts filed a claim seeking the insurance proceeds under the policy. Marysville denied the claim. Subsequently, the Bank, on behalf of the Fanchers, made a demand on the insurance proceeds under the standard mortgage clause previously described. Marysville refused to pay the fire loss, either to the Bank or to the Fanchers.

Fanchers filed suit against Marysville, its agent Carson–Campbell, Inc., and the Bank, claiming they were third party beneficiaries under the standard mortgage clause. Marysville argued the Fanchers were conditional vendors, not mortgagees, and therefore had no right to the insurance proceeds. In its view, under the express terms of the standard mortgage clause, it was contracting to insure the interest of a mortgagee and not the divergent interest of a conditional vendor.

The Court believed that although Fanchers held no mortgage on the duplex, their status as conditional vendors gave them an insurable interest sufficient to support a contract of insurance. *Id.* at 144–45, 530 P.2d 1225. The Court found the insurance policy to be ambiguous, thus requiring a

meaning most favorable to the insured. *Id.* at 146, 530 P.2d 1225. It found the duties and functions of the Bank were sufficiently similar to a trustee that a person in Fanchers' position could reasonably understand the standard mortgage clause to mean the Bank was acting as a trustee for the Fanchers. *Id.*

The Morgans place heavy reliance on *Fancher* and argue its holding compels a conclusion that they have an insurable interest. The court disagrees. *Fancher* addresses the rights of a *vendor* who had negotiated a written conditional sales contract. It does not address the question of whether a vendee under an oral contract has an insurable interest and therefore has no application to this case.

In *Price v. Trinity Universal Ins. Co.*, 8 Kan.App.2d 223, 224, 654 P.2d 485, *rev. denied*, 232 Kan. 876 (1983), the court considered whether a policyholder had an insurable interest in property destroyed by fire. The plaintiffs in *Price* entered into a written contract to purchase a lot and house in Junction City, Kansas. Upon execution of the contract, the plaintiffs took possession of Lot 3. A month later, they filed suit against the sellers seeking specific performance of the contract of sale as to Lot 3. The sellers asserted they had not intended to sell Lot 3 and only did so because of a mutual mistake of fact. While the lawsuit was pending, the plaintiffs purchased an insurance policy protecting the property against loss by fire in the amount of $5,000. Six months later and while the lawsuit was still pending, the house was damaged by fire. Thereafter, the lawsuit went to trial, and the court found the contract to purchase the house in question was void *ab initio*.

Following this decision, the plaintiffs filed suit seeking $5,000 under the insurance policy. The trial court found the plaintiffs had no insurable interest. On appeal, the court affirmed. The court's reasoning was as follows:

> Here the contract under which plaintiffs are claiming was declared void from the beginning for mutual mistake of fact. Plaintiffs were in possession of the property without the consent of the true owners, judicially determined ... The house which burned was not plaintiffs' property and never had been. They suffered no pecuniary damage from its destruction. To permit recovery under the fire policy would amount to a windfall for plaintiffs ...

*Id.* at 224–25, 654 P.2d 485.

We believe *Price* is distinguishable from the case at bar. Because of the court's finding of mutual mistake, the plaintiffs in *Price* were effectively trespassers and had no rights to the property at issue. By contrast, the Morgans were occupying the Hill City Auto Bowl under an agreement, albeit an oral one, and had the consent of the true owners of the property. We perceive a difference in this context between a void contract and a contract that satisfies the legal prerequisites of a contract but is unenforceable due to the statute of frauds. Under the holding in *Price*, the former can give a party no rights, legal or equitable. This holding does not necessarily rule out in the latter situation the existence of equitable rights giving rise to an insurable interest.

In the court's view, the Kansas case law does not provide a definitive answer as to whether a vendee under an oral contract to purchase real property has an insurable interest. Several other jurisdictions, however, have considered the issue before us. Their reasoning is instructive. In *Hatcher v. Harleysville Mutual Insurance Company*, 266 S.C. 548, 225 S.E.2d 181 (1976), the court faced a factual situation almost indistinguishable from this case. In *Hatcher*, the Hatchers orally agreed to purchase a lot and house on October 4, 1974. The next day, they moved into the house pursuant to the oral contract of sale. On October 8, 1974, the seller cancelled an insurance policy covering the house but procured from Harleysville, using funds provided by the Hatchers, an insurance policy insuring the property in the names of the Hatchers, as the owners. On October 11, 1974, the house and its contents were damaged by fire. Harleysville paid the Hatchers for

damage to their personal property, but denied coverage for loss to the house.

Harleysville's argument on appeal was that the oral contract to purchase the real property was in violation of the statute of frauds and unenforceable; since the agreement was unenforceable, the Hatchers had no insurable interest. 225 S.E.2d at 183. The court rejected that argument, holding that Harleysville, which was a stranger to the oral contract, had no standing to assert the invalidity of the contract in order to avoid liability upon its policy. *Id.* According to the court, the statute of frauds was a personal privilege of the parties to the agreement, and unavailable to Harleysville. *Accord Deck v. Chautaugua County Patrons' Fire Relief Assoc.*, 73 Misc.2d 1048, 343 N.Y.S.2d 855, 871 (1973) (insurer may not defeat its liability under a fire insurance policy because of legal inadequacies of an insured's contract to obtain an interest in the property insured). The court found the facts supported a finding of an insurable interest. For example, the Hatchers and the seller entered into the contract in good faith, the Hatchers were occupying the house pursuant to the contract, the closing of the sale awaited only the receipt of the lender's check, the insurance was procured to protect the Hatchers' interest, and there was no evidence of an intent on the Hatchers' part to defraud Harleysville. *Id.*

The court in *O'Neal v. Commercial Assurance Company of America*, 263 So.2d 246 (Fla.1972), held on similar facts that the insured had an insurable interest, but limited [1] the insured's recovery to the amount she had paid under the oral contract. *Id.* at 246–47. Other courts have gone so far as to hold that mere expectation of occupancy may create an insurable interest. *Young v. State Farm Fire & Casualty Ins.*, 426 So.2d 636 (La.App.1983), *cert. denied*, 433 So.2d 148 (La.1983); *Cf. G.M. Battery & Boat Company v. L.K.N. Corporation*, 747 S.W.2d 624 (Mo.1988) (optionholder has an insurable interest if there is potential for loss in the destruction

of the subject property); *See Suggs v. State Farm Fire and Cas. Co.*, 833 F.2d 883, 887–88 (10th Cir.1987), *cert. denied*, 486 U.S. 1007, 108 S.Ct. 1732, 100 L.Ed.2d 196 (1988) (purchaser of mobile home pursuant to an unwritten agreement found to have an insurable interest in the mobile home).

The court in *Anderson v. State Farm Fire and Casualty Company*, 397 N.W.2d 416 (Minn.App.1986), took a more narrow view as to what constituted an insurable interest. In *Anderson*, the insured (Anderson) and his former spouse acquired a parcel of land upon which they constructed a garage. State Farm insured the property. After the Andersons divorced in 1982, William Anderson continued to use the garage rent-free, and maintained control of the garage and stored personal property therein. William Anderson paid the insurance premiums for the years 1982, 1983, and 1984. When Nancy Anderson returned to the area in 1984, she changed her mind about letting William Anderson store his personal property in the garage, and asked him to remove it within two weeks. Approximately ten days later, the garage and its contents were completely destroyed by fire. State Farm refused to pay William Anderson's claim for the value of the garage. William Anderson commenced suit, and the trial court ordered judgment in the amount of $12,730. On appeal, the Minnesota Court of Appeals reversed.

The court took notice of the Minnesota Supreme Court's view that "insurable interests" are not necessarily synonymous with absolute property rights. *Id.* at 417. Nevertheless, the court stated that an individual's property interest must be substantial and real to qualify as an insurable interest. *Id.* In the case before it, the court found William Anderson's interest in the garage was nothing more than a mere license to occupy, and his claim was only an expectancy. Therefore, he had no risk of

---

**1.** The rule limiting damages to the amount of actual interest has been followed in other courts. *Prince v. Royal Indem. Co.*, 541 F.2d 646, 648, n. 1 (7th Cir.1976), *cert. denied*, 429 U.S. 1094, 97 S.Ct. 1108, 51 L.Ed.2d 540 (1977).

direct pecuniary loss by damage or destruction of the garage. *Id.* at 418.

 The court believes that Kansas law does not restrict insurable interests in real property to those interests enforceable under the statute of frauds, but extends to cover an insurable interest that is unenforceable under the statute of frauds. Under the facts of this case, it is clear that the Morgans stood to profit by the continued existence of the Hill City Auto Bowl and suffered loss through its destruction. The Morgans had operated the business for over five months and expended money in the course of operating the business. *Weaver*, 168 Kan. at 84, 211 P.2d 113. The oral sales contract appears to have been entered into in good faith, and the execution of a written contract appears to have been within the contemplation of the parties at the time of the loss. Moreover, the Morgans lost their residence in the blaze.

Patrons' argument renders the insurance contract illusory. Although Morgans paid the premiums, Patrons' argument allows it to reserve the right to cancel the policy and return the premium in the case of a loss. Patrons had the ability to ascertain the record owners of the Hill City Auto Bowl at the time it issued the insurance policy. If Patrons believed that Morgans had no enforceable interest in the property, it could have declined to issue coverage or it could have specifically conditioned coverage on the insured holding legal title to the property. Having done neither, it cannot now escape coverage for a loss for which there would have been unquestioned coverage but for the insurable interest argument. Patrons' conduct equitably estops it from denying coverage. *Mutual Life Ins. Co. v. Bernasek*, 235 Kan. 726, 730, 682 P.2d 667 (1984) (quoting *Cosgrove v. Young*, 230 Kan. 705, Syl. ¶ 6, 642 P.2d 75 (1982)).

The court holds that Morgans' possession and operation of the Hill City Auto Bowl for over five months, coupled with their expenditure of funds to improve the facility, gives rise to an insurable interest. Notwithstanding our holding, the court expresses no opinion as to what measure of recovery the Morgans should receive. The court believes the proper course is to allow both parties an opportunity to submit briefs addressing this issue in light of the court's holding.

The parties are therefore directed to submit briefs addressing what Morgans' amount of recovery should be within thirty days of this order. Thereafter, if appropriate, the court will enter summary judgment in Morgans' favor in an amount hereafter to be determined. If summary judgment is not appropriate, the matter will be set for trial.

IT IS SO ORDERED.